THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID BATES, Defendant-Appellant.

First District (3rd Division)   No. 1—88—2377

Opinion filed August 7, 1991.

James Chadd, of State Appellate Defender's Office, of Chicago, for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Pistorius, and Steven Klacyznski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant David Bates and his codefendant Gregory Banks were charged with the murder and armed robbery of Leon Barkan, and the attempted murder and aggravated battery of Jeltro Givens. Both defendants filed pretrial motions to quash arrest and suppress evidence. The court denied both defendants' motions. Banks was tried by a jury and found guilty of the murder and armed robbery of Barkan

and the aggravated battery of Givens. The court sentenced him to concurrent terms of 50 years on the murder conviction, 30 years on the armed robbery conviction, and 10 years on the aggravated battery conviction. Banks' conviction was subsequently reversed on appeal and the cause remanded for a new trial because this court found that his confession was procured through police brutality and racial intimidation. (*People v. Banks* (1989), 192 Ill. App. 3d 986, 549 N.E.2d 700.) In a contemporaneous, but separate, bench trial, the court found Bates guilty of the murder and armed robbery of Leon Barkan and the attempted murder and aggravated battery of Jeltro Givens. He was subsequently sentenced to serve concurrent sentences of 20 years on the murder charge, 10 years on the attempted murder charge and 10 years on the armed robbery charge. On appeal, defendant Bates argues that the trial court erred in denying his motions to quash arrest and suppress statements. We remand with directions.

At the hearing on defendant's motions, the following evidence was presented. Chicago police detective Edmund Leracz testified that on October 29, 1983, he received an assignment from Sergeant John Byrne to go to 9614 South Wentworth to arrest defendant. Leracz did not review the police reports in the case and was not familiar with the police investigation. At approximately 8 a.m. that morning, Chicago police detectives Leracz, Bird and Lacy went to defendant's home. When the officers arrived they knocked, asked for defendant and were admitted by a woman and directed to the basement of the home, where defendant was sleeping. Leracz testified that he told defendant that he was under arrest and that he would have to come with them. After defendant was dressed, the officers took him to Area Two police headquarters. Leracz did not read defendant his rights.

Detective Leonard Bajenski testified that he interviewed defendant at approximately 11 a.m. on October 29, 1983. While defendant was handcuffed to a ring on the wall of the detention cell, Bajenski read him his *Miranda* rights and questioned him for approximately 5 to 10 minutes. Bajenski did not interview defendant again during his detention, and he testified that he did not strike or observe any other officer strike defendant.

Detectives Bryne and Grunhard testified that they did not participate in the interrogation of defendant. In fact, according to the police testimony, no one talked with defendant again until 12 a.m. the following day. Detective Robert Dwyer testified that at approximately 12:15 a.m. on October 30, 1983, he spoke with defendant in an interview room at Area Two headquarters. He testified that he read

defendant his *Miranda* rights and that defendant indicated that he understood them. According to Dwyer, the conversation lasted approximately 20 to 30 minutes. Later, at around 2:15 a.m., Dwyer interviewed defendant along with Assistant State's Attorney Bastounes. Bastounes read defendant his *Miranda* rights again, and defendant gave a court-reported statement to Bastounes and Dwyer at approximately 3:40 a.m. Dwyer testified he never struck or observed anyone else strike, threaten or make promises to defendant. Assistant State's Attorney Bastounes' testimony essentially corroborated Dwyer's.

Defendant, age 19 at the time of his arrest, testified that on the morning of his arrest he was asleep in his bedroom, located in the basement of his family's home, when police officers entered his room, woke him up and handcuffed him. When they reached police headquarters, defendant was placed in a small interrogation room where he was handcuffed to the wall or with his hands behind his back while interrogated on and off over a period of two days. Defendant testified that during this time period the police failed to advise him of his constitutional rights. He further testified that he was repeatedly interrogated by Sergeant Byrne and Detective Grunhard. Defendant testified that these two police officers interrogated and tortured him four or five separate times during the day of October 29. He testified that they punched him in the stomach with closed fists and slapped him in the face. Defendant testified that this treatment continued until he hollered or pretended to lose consciousness.

Defendant testified that Bryne and Grunhard also placed a plastic bag over his head and pulled it until the air was cut off and he nearly passed out. He testified that at one point, one officer punched him in the stomach while the other held a bag over his head. He further testified that the officers told him, "[t]hat's okay, we'll take care of you on the graveyard shift. We're gonna take you outside in the forest or somewhere over there where we can do what we want to. You'll say something then." Defendant testified that following another torture session involving the plastic bag and punches to his stomach, another officer told him that if he cooperated, he would get probation or be let loose. He further testified that the officers notified him that if he did not give a statement, Byrne and Grunhard were going to take him out to the forest. Defendant then agreed to give a statement and was taken to another room where he made a court-reported admission.

Clarence Burch testified that on October 30, 1983, he was defendant's attorney. He testified that on that date, he went to Area Two headquarters to see defendant. Defendant told Burch that he gave the

police a statement because the police had put a plastic bag over his head and tightened it around his neck. According to Mr. Burch, defendant showed him a small abrasion on his neck and told him that he had contusions on his chest and stomach.

A stipulation was entered that Lee Holmes would testify that on September 10, 1982, he was interrogated at Area Two by four detectives, including Bryne and Dignan. Mr. Holmes would testify that he was beaten with a flashlight and tortured with a plastic bag held over his head. Mr. Holmes received medical treatment for his injuries and filed a complaint with the Office of Professional Standards against Byrne and Dignan. Following the hearing, the court denied defendant's motions to quash arrest and suppress statements. Defendant's statement was subsequently admitted into evidence at trial.

On appeal, defendant does not challenge the sufficiency of the evidence, so we will not set out the underlying facts of this case. Following the court's finding of guilt and sentence, this appeal followed.

Defendant's sole contention on appeal is that the trial court erred in denying his motion to quash arrest and suppress statements. Defendant first argues that the trial court should have granted his motion to quash arrest because the police did not have probable cause to arrest him.

■ The State first responds that defendant has waived his objection to the alleged lack of probable cause to arrest him where he failed to raise it in his motion to quash arrest. Where the contention that a defendant was arrested without probable cause is not made in a motion to suppress during trial, or in a post-trial motion, and the issue is raised for the first time on appeal, the claim of error is waived. *People v. Accardo* (1985), 139 Ill. App. 3d 813, 816, 487 N.E.2d 664, 666.

Here, defendant's motion to quash arrest clearly raised the issue of probable cause to arrest where the motion provided in part:

"In support of this motion the [d]efendant asserts: (4) That the arrest of the [p]etitioner was made without authority of a valid search or arrest warrant. (5)(a) The conduct of the petitioner prior to his arrest was not such as was reasonably interpreted by the arresting officers as constituting probable cause that the petitioner had committed or was about to commit a crime. (b) At the time of the arrest, the petitioner was not violating any law. (c) There existed no exigent circumstances. *** (7) That the alleged victim, *** provided a physical description of his assailants as 'Two males of unknown description.' "

We find as a matter of law that defendant's motion to quash arrest sufficiently raised at the trial level and preserved for appellate review the question of whether the police lacked probable cause to arrest him.

We next decide whether the evidence adduced at the pretrial hearing and at trial provided sufficient probable cause to support defendant's arrest.

To meet its burden of establishing probable cause for an arrest, the State must show that the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and that the arrestee has committed the offense. The probable cause determination is a commonsense, practical question to be determined by the totality of the circumstances. *Illinois v. Gates* (1983), 462 U.S. 213, 231-32, 76 L. Ed. 2d 527, 544, 103 S. Ct. 2317, 2328-29.

■■ ■ This standard seeks to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. It also seeks to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. (*Brinegar v. United States* (1949), 338 U.S. 160, 176, 93 L. Ed. 1879, 1891, 69 S. Ct. 1302, 1311.) An arrest is not unlawful merely because the information on which it is based is wrong. The police have probable cause if they believe, with reason, that their informant was telling the truth. *McKinney v. George* (7th Cir. 1984), 726 F.2d 1183, 1187.

■ Once the defendant has made a *prima facie* case that the police lacked probable cause (*i.e.*, by evidence that the police had no warrant, and that defendant was doing nothing unusual at the time of his arrest), the burden of going forward with evidence to demonstrate the legal justification for the search shifts to the State. (*People v. Broge* (1987), 159 Ill. App. 3d 127, 140, 511 N.E.2d 1321, 1329.) When examining the probable cause ruling on review, a reviewing court will not disturb the trial court's finding unless manifestly erroneous and it may consider any evidence adduced at trial which assists in establishing the legality of the arrest. *People v. Mackey* (1990), 207 Ill. App. 3d 839, 858, 566 N.E.2d 449, 460.

Defendant argues that the State failed to introduce any evidence during either the hearing on the motions to quash arrest and suppress statements or at trial which demonstrated that the police had proba-

ble cause to arrest him. The State concedes that evidence of sufficient probable cause to arrest is absent from the record and contends that this case should be remanded for an additional probable cause hearing. The State argues that an additional hearing is required in order to demonstrate that, although arresting officer Leracz was not familiar with the details of the crime or of the offender's description, Sergeant Byrne and Detective Dignan possessed information obtained from codefendant Banks which provided sufficient probable cause to support Bates' arrest. In fact, defendant Banks' statement, which has been suppressed by this court, named Bates as an alleged participant in the charged offenses. However, Banks' statement was not introduced into evidence during Bates' separate, but contemporaneous, pretrial hearing or trial.

The State argues that Banks' statement would have provided sufficient probable cause for defendant's arrest. However, the State failed to present evidence on the issue of probable cause. At the pretrial hearing, the State's only mention of police probable cause to arrest Bates was in rebuttal argument following the hearing on the pretrial motions. At that hearing, the following argument was made:

"ASSISTANT STATE'S ATTORNEY: Judge, first of all, as to the Defendant Bates on the motion to quash, whether or not Detective Leracz had consent to enter and place Defendant Bates under arrest is a matter of credibility. You heard the officer testify that he did, in fact, have the consent to enter. Whether or not he had probable cause to make the arrest is another matter. In fact, he did, judge. He had the co-defendant, Banks, give up Bates. What more probable cause can an officer have than one co-defendant naming another?

DEFENSE ATTORNEY: Objection. That was not the testimony. The officer said that he did not even read the reports. He was just told to arrest him.

THE COURT: Let's proceed. This is argument."

The State's argument that Banks' statement "giving up" Bates was sufficient probable cause to support arrest was clearly inappropriate argument since it was not based on the evidence adduced at the hearing. No one testified that Bates was arrested based on Banks' statement, although that inference can be gleaned from the copy of Banks' court-reported statement which was subsequently introduced at Banks' trial. Since the State had every opportunity to present evidence and, based on rebuttal argument, knew that probable cause to arrest was at issue, its failure to elicit testimony in support of its position was apparently made knowingly. Therefore, the State will not

be allowed to establish at the appellate level what it failed to do at the trial level, and remand for an additional probable cause hearing in order to elicit additional testimony from Sergeant Bryne and Detective Dignan, who were available and testified at the pretrial hearing, is denied. See *People v. Adams* (1989), 131 Ill. 2d 387, 395, 546 N.E.2d 561, 564-65.

▮ The State's failure to introduce any evidence of probable cause to arrest at the hearing, combined with the fact that the only evidence available—*i.e.*, Banks' statement—which was not introduced in evidence at Bates' pretrial hearing or trial and has now been suppressed by this court, leads us to but one conclusion. The trial court erred in denying defendant's motion to quash arrest. The State had notice that defendant challenged the police's probable cause for his arrest. However, despite this fact, the State failed to elicit any evidence which demonstrated that they had probable cause to arrest defendant. Additionally, assuming *arguendo* that the coerced inculpatory statement of a detained criminal codefendant would have been admissible, it was not sufficiently reliable or corroborated to provide probable cause for Bates' arrest.

▮ While the police are allowed to make reasonable mistakes and do not lack probable cause to arrest if they reasonably believe the statement of an informant which later proves to be incorrect, the police cannot claim that they reasonably believed that a forcibly obtained confession was either reliable or true. In addition, it would be inappropriate to reward flagrantly illegal police activity by allowing the use of a coerced statement as probable cause for a subsequent arrest.

▮ Here, the evidence adduced demonstrated that the surviving victim did not see the offenders' faces. The officer who arrested Bates testified that he was not familiar with the investigation and that he arrested defendant on orders from Sergeant John Byrne. Sergeant Byrne did not testify regarding his involvement in Bates' arrest. Further, both Byrne and Dignan denied any involvement in defendant Bates' interrogation. No testimony was elicited regarding the basis of Byrne's order to Lecracz to arrest Bates. Further, throughout the hearing and trial, no one testified as to why defendant was arrested. There was clearly no admissible evidence upon which the trial court could base its finding that the police had probable cause to arrest defendant. The State failed to rebut defendant's *prima facie* showing that his arrest was illegal. Thus, the trial court's finding that the State had probable cause to arrest defendant is manifestly erroneous.

Additionally, assuming *arguendo* that the State had introduced evidence that Bates was arrested on the basis of Banks' statement, we would still find that the police lacked probable cause to arrest Bates because they could not have reasonably believed that a forcibly coerced statement was reliable.

■ Violation of another person's fifth amendment rights may rise to the level of a violation of defendant's right to a fair trial. (*United States v. Chiavola* (7th Cir. 1984), 744 F.2d 1271, 1273.) Due process is implicated when the government seeks a conviction through use of evidence obtained by extreme coercion or torture. (*Chiavola,* 744 F.2d at 1273.) Here, the State's attempted use of a coerced statement to support police probable cause for the arrest of Bates is inappropriate and violative of defendant's right to a fair trial. The State's contention that the statement was corroborated by evidence retrieved as a result of Banks' statement is without merit where the evidence obtained failed to directly link Bates to the commission of the crime. This case is clearly distinguishable from *People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998, where there was no evidence in that case that the co-offender's inculpatory statement was forcibly coerced. Accordingly, the trial court's order denying Bates' motion to quash arrest is reversed and his motion to quash arrest is granted.

The next issue for consideration is whether defendant's subsequent statement was sufficiently attenuated from the taint of his illegal arrest and sufficiently an act of his own free will to permit its admission and use as substantive evidence.

The defendant argues that the State failed to meet its burden of showing that defendant's statements were an act of free will that purged the taint of the illegal arrest. The State contends that the evidence demonstrates that defendant's confession was the product of free will sufficient to purge the primary taint. The State further contends that although the record does not demonstrate evidence of intervening circumstances, this absence was the result of the fact that the State won the motion to quash arrest and suppress statements. The State therefore urges this court to remand for an additional attenuation hearing if it finds the intervening circumstances factor to be important to its determination.

■ The determination that an illegal arrest has occurred is not dispositive of the issue of the admissibility of a subsequent confession. (*People v. Foskey* (1990), 136 Ill. 2d 66, 85, 554 N.E.2d 192, 201.) The relevant inquiry is whether the confession was obtained by exploitation of the illegality of the arrest. (*Brown v. Illinois* (1975), 422 U.S. 590, 600, 45 L. Ed. 2d 416, 425, 95 S. Ct. 2254, 2260.) Evidence ob-

tained after an illegal arrest need not be suppressed if such evidence was obtained by means sufficiently distinguishable to be purged of the primary taint. *People v. White* (1987), 117 Ill. 2d 194, 222, 512 N.E.2d 677, 687; *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.

■■ Under *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, factors to be considered in determining whether a confession was the product of the illegal arrest are: (1) the proximity in time between the arrest and the confession; (2) the presence of intervening circumstances; (3) the purpose and flagrancy of the police misconduct; and (4) whether *Miranda* warnings were given. (422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62.) The burden of showing redeeming attenuation as to evidence obtained through an illegal arrest is on the prosecution. *White*, 117 Ill. 2d at 222; *Foskey*, 136 Ill. 2d at 86.

The threshold requirement of voluntariness was satisfied as discussed below. We find that defendant was given his *Miranda* warnings on several separate occasions and that his statement was not coerced.

■■■ Here, the key question is whether a causal connection exists between defendant's illegal arrest at 8 a.m. on October 29, and his statement made at 3:40 a.m. on October 30, 1983. The *Brown* decision's focus on the causal connection between the illegality and the confession reflects the two policies behind the use of the exclusionary rule to effectuate the fourth amendment. When there is a close causal connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but use of the evidence is more likely to compromise the integrity of the courts. *Dunaway v. New York* (1979), 442 U.S. 200, 217-18, 60 L. Ed. 2d 824, 839, 99 S. Ct. 2248, 2259.

■■■ Here, however, the trial court was not presented with the attenuation issue. We therefore remand this matter for the trial court's determination of whether sufficient attenuation exists to purge the statements made by defendant from the taint of his illegal arrest. (See *People v. Vega* (1990), 203 Ill. App. 3d 33, 44, 560 N.E.2d 983, 991.) If the court finds such attenuation, it is directed to reinstate the judgment of conviction. If the court finds no such attenuation, it is directed to suppress the statements and to conduct further proceedings consistent with this opinion. See *People v. Beamon* (1991), 213 Ill. App. 3d 410, 426-27, 572 N.E.2d 1011, 1022-23.

Defendant next argues that the trial court erred in denying his motion to suppress his statements. Defendant contends that his statement was coerced through the use of physical torture.

■■ The State bears the burden of establishing by a preponderance of the evidence that a confession is voluntary. (*People v. Caballero* (1984), 102 Ill. 2d 23, 33, 464 N.E.2d 223, 227.) The trial court's findings will not be reversed unless they are against the manifest weight of the evidence. (*Caballero*, 102 Ill. 2d at 33.) In determining whether a confession has been voluntarily given, courts have utilized the tests of whether, considering the totality of the circumstances, the confession is found to have been made freely and voluntarily without compulsion, or whether the defendant's will was overborne at the time he confessed so as not to be the product of rational intellect and free will. (*People v. Prude* (1977), 66 Ill. 2d 470, 475, 363 N.E.2d 371, 373; *People v. O'Leary* (1970), 45 Ill. 2d 122, 125, 257 N.E.2d 112, 114.) On review, the trial court's decision will not be reversed absent an abuse of discretion. *People v. Mackey* (1990), 207 Ill. App. 3d 839, 860, 566 N.E.2d 449, 462.

■■ Defendant contends that his statement was procured through police brutality. Specifically, he testified that Sergeant Byrne and Detective Grunhard beat and tortured him on four to five separate occasions on October 29, 1983. In addition, defendant's attorney on the day of his arrest testified that at approximately 10:30 p.m. on October 30, he interviewed defendant at Area Two police headquarters. Defendant told him that he gave a statement to the police because a plastic bag had been placed over his head and tightened. Attorney Burch also testified that he observed a small abrasion on defendant's neck. However, defendant failed to introduce any additional evidence to corroborate his claim of coercion. Here, unlike in *Banks*, there was no corroborative medical evidence of physical injuries, and no indication that defendant made a prompt outcry to other police personnel. Under these circumstances, we cannot find as a matter of law that the trial court's findings are against the manifest weight of the evidence.

The State's evidence which consisted of the testimony of five police officers and an assistant State's Attorney who all testified that defendant was given his *Miranda* warnings on numerous occasions and that they did not strike or coerce or observe anyone else strike or coerce defendant was sufficient to meet the State's burden of establishing the voluntariness of defendant's statement by a preponderance of the evidence. Defendant's testimony and evidence failed to adequately rebut the State's case. We therefore conclude that the trial

court did not err in denying defendant's motion to suppress his statement as involuntarily given.

Accordingly, we affirm the order of the circuit court which denied defendant's motion to suppress statements on the basis of voluntariness; reverse the order which denied his motion to quash arrest; and remand this matter for an attenuation hearing and further proceedings in accordance with this opinion.

Affirmed in part; reversed in part; and remanded with directions.

CERDA, P.J., and WHITE,* J., concur.

---

*Justice White participated in this opinion prior to his retirement.