THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARIO JENNINGS, Defendant-Appellant.

First District (3rd Division)   No. 1—96—1463

Opinion filed May 20, 1998.

Steven A. Greenberg, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Joan Frazier, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LEAVITT delivered the opinion of the court:

Fifteen-year-old defendant Mario Jennings was charged with the

first degree murder of Joseph Merriwether and tried as an adult. Following a bench trial defendant was found guilty of second degree murder and sentenced to the juvenile division of the Illinois Department of Corrections. He appeals, contending (1) his postarrest statements should have been suppressed as the product of his illegal arrest, and (2) the evidence was insufficient to rebut his claim of self-defense.

The facts of this case necessary to resolve this appeal are not disputed. The body of the victim, Joseph Merriwether, was discovered on March 13, 1995, in the vicinity of 9440 South Vernon in Chicago. Merriwether had been killed by a single gunshot wound to the chest.

DeMar Buffen testified he was at defendant's house with Edward Caples and John Fleming on March 15, 1995. While at the house, defendant admitted to Buffen he had shot Merriwether, who defendant believed to be a Gangster Disciple, when Merriwether tried to take his jacket. Defendant showed Buffen the gun he had used to kill Merriwether.

The four boys then decided to go to Caples' girlfriend's house at 95th and Vernon. Since that area was Gangster Disciple territory, the group agreed to take defendant's gun, but they further agreed Buffen should carry it. The boys took a bus to 95th and Vernon and began walking down an alley. At that point defendant told the group he should not be in the area because this was where he had killed Merriwether.

That same day, Detectives Francis Heslin and Kevin Glynn were investigating the Merriwether homicide and were canvassing the area where the murder had occurred. As they drove in their unmarked car, they saw defendant and three other boys walking down an alley around 424 East 95th Street. As the detectives approached, Buffen removed the gun from his waistband and ran. The two detectives chased and caught Buffen and then returned to where they had seen the others. Since the officers had not yet recovered the gun, they handcuffed all four boys and placed them in the car. According to Buffen, while in the car, defendant told him that if the gun was recovered and Buffen was questioned by the police, he should tell them defendant had given him the gun. Buffen testified defendant also assured him he should not worry about going to jail for the murder, since defendant would admit to the killing if questioned.

After the officers recovered the gun in the alley, they took all four boys to the police station and separated Buffen from the other three. Glynn and Heslin contacted the one witness to the Merriwether shooting and learned the perpetrator had worn a black-and-orange Miami Hurricanes jacket with a big bird on it. Buffen was then interviewed.

After Buffen was read his *Miranda* rights, he told the detectives defendant had given him the gun to hold. The detectives noted Buffen was wearing a white-and-orange windbreaker, which did not match the description of the perpetrator's jacket given by the witness.

The detectives then sought to question defendant. As defendant was being led into the interrogation room, the detectives became curious about defendant's jacket. Heslin testified they "noticed that [defendant] had a Miami Hurricanes team jacket turned inside out that [they] did not notice earlier." Defendant was asked to remove his coat. After his jacket was seized and he was advised of his *Miranda* rights, defendant gave a statement implicating himself in the murder of Merriwether.

Following a hearing, the trial court granted defendant's motion to quash his arrest. The judge concluded defendant had been arrested in the alley without probable cause, and defendant's coat was eventually suppressed based upon the illegal arrest. An attenuation hearing was held, with the trial judge ultimately concluding defendant's statement to the police was sufficiently attenuated from his illegal arrest. The judge based this finding, in part, on various intervening circumstances which had occurred between the time of the illegal arrest and the making of the statement. The trial judge specifically noted three intervening factors in finding attenuation: the recovery of the murder weapon, Buffen's statement—expressly approved by defendant—that the gun belonged to defendant, and the coat which matched the description given by a witness to the shooting.

Defendant filed a motion for reconsideration, arguing attenuation could not have been based upon the seizure of defendant's coat, since the trial court had earlier suppressed the coat as the fruit of an illegal arrest. The trial judge acknowledged his error in considering the coat as an intervening circumstance, but concluded that, even without considering the coat, defendant's statement was nevertheless sufficiently attenuated from his earlier illegal arrest. Defendant's statement was subsequently admitted at his trial, and the trial court ultimately found defendant guilty of second degree murder. This appeal followed.

■■ ■ Defendant contends the court erred in finding his postarrest statements were sufficiently attenuated from his illegal arrest. The law is clear that not every statement made by a suspect subsequent to an illegal arrest is subject to suppression; the relevant inquiry is whether the statement was obtained by exploitation of the illegal arrest. *People v. Foskey*, 136 Ill. 2d 66, 84, 554 N.E.2d 192 (1990). To be admissible, an inculpatory statement that follows an illegal arrest must be " 'sufficiently an act of free will to purge the primary taint of

the unlawful invasion.'" *People v. White*, 117 Ill. 2d 194, 222, 512 N.E.2d 677 (1987), quoting *Wong Sun v. United States*, 371 U.S. 471, 486, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, 416-17 (1963). Assuming a statement so obtained is given voluntarily under the fifth amendment, whether the statement is sufficiently attenuated from the prior illegal arrest to permit its admission under the fourth amendment requires an examination of four factors: (1) whether *Miranda* warnings were given; (2) the proximity in time between the arrest and the statement; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the police misconduct. *Foskey*, 136 Ill. 2d at 85-86; *White*, 117 Ill. 2d at 222; see also *Brown v. Illinois*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62 (1975). The burden of demonstrating attenuation rests upon the prosecution. *Foskey*, 136 Ill. 2d at 86; *White*, 117 Ill. 2d at 223. Where the parties do not dispute the relevant facts and differ in opinion only on the legal conclusions to be drawn from those facts, we review *de novo* a trial court's ruling on a motion to suppress a suspect's postarrest statement. See *People v. Oaks*, 169 Ill. 2d 409, 447-48, 662 N.E.2d 1328 (1996); *People v. Austin*, 293 Ill. App. 3d 784, 787, 688 N.E.2d 740 (1997).

■ In this case it is undisputed defendant was given *Miranda* warnings. However, the mere giving of *Miranda* warnings is, without more, insufficient to purge the taint of an illegal arrest. *Foskey*, 136 Ill. 2d at 86; *White*, 117 Ill. 2d at 223; see also *Brown*, 422 U.S. at 603, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261. Moreover, while defendant was given *Miranda* warnings prior to giving his statement, no warnings were given prior to the seizure of the coat. This factor adds little in support of a finding of attenuation.

The second *Brown* factor, the proximity in time between the arrest and the making of the statement, is also arguably of little significance in judging attenuation. See *White*, 117 Ill. 2d at 223-24 (noting "[t]he temporal proximity between an arrest and a confession is often an ambiguous factor, the significance of which will depend upon the particular circumstances of a particular case"); *People v. Beamon*, 255 Ill. App. 3d 63, 68, 627 N.E.2d 316 (1993); see also *Dunaway v. New York*, 442 U.S. 200, 220, 60 L. Ed. 2d 824, 841, 99 S. Ct. 2248, 2261 (1979) (Stevens, J., concurring) ("[i]f there are no relevant intervening circumstances, a prolonged detention may well be a more serious exploitation of an illegal arrest than a short one"); 5 W. LaFave, Search & Seizure § 11.4(b) (3d ed. 1996). Nevertheless, to the extent it is significant, the temporal proximity factor does not support a finding of attenuation here. Defendant made his inculpatory statement not long after his illegal arrest—roughly 2¹/₂ hours

separated the arrest and statement. The trial court found the passage of that amount of time did not contribute to attenuation. We agree.

The third and fourth attenuation factors—the flagrancy of the police misconduct and the presence (or absence) of intervening circumstances—have emerged as the most relevant in assessing the admissibility of a statement obtained subsequent to an illegal arrest. *Cf. Beamon*, 255 Ill. App. 3d at 67-68; *People v. Townes*, 91 Ill. 2d 32, 37, 435 N.E.2d 103 (1982); *In re R.S.*, 93 Ill. App. 3d 941, 945-46, 418 N.E.2d 195 (1981); see also 1 R. Ruebner, Illinois Criminal Procedure § 2.30, at 2—66 through 2—67 (2d ed. 1997); 4 W. LaFave, Search & Seizure § 11.4(b) (3d ed. 1996). Turning to the flagrancy factor, attenuation is less likely to be found where the police misconduct in bringing about the illegal arrest is flagrant. Police action is flagrant where the investigation is carried out in such a manner as to cause surprise, fear, and confusion, or where it otherwise has a "quality of purposefulness," *i.e.*, where the police embark upon a course of illegal conduct in the hope that some incriminating evidence (such as the very statement obtained) might be found. See *Foskey*, 136 Ill. 2d at 86; see also *Brown*, 422 U.S. at 605, 45 L. Ed. 2d at 428, 95 S. Ct. at 2262.

The conduct of the police in this case does suggest some degree of purposefulness. The only one of the four boys seen with a gun was Buffen. Once the officers found the discarded weapon and secured the area, the continued detention of defendant and the other two boys was unjustified. It was uncontested defendant had done nothing illegal that would have justified the police in taking him to the police station. Heslin and Glynn were in the area investigating the earlier homicide when they encountered defendant and his companions. Heslin, in fact, testified they took all the boys to the station with the intent to question them about "[t]he gun that we recovered from De-Mar and the homicide that occurred two days previous." The fact that the detectives consulted with a witness to the murder for descriptive evidence prior to questioning defendant further compels the conclusion that defendant's illegal arrest was undertaken for the purpose of obtaining incriminating evidence related to the murder. Compare *People v. Gabbard*, 78 Ill. 2d 88, 98, 398 N.E.2d 574 (1979) (where arresting officer was unaware of the crime concerning which defendant later made an admission, defendant's statement held attenuated), with *People v. Stofer*, 180 Ill. App. 3d 158, 171, 534 N.E.2d 1287 (1989) (finding flagrant conduct where police brought in the defendant and five of his acquaintances solely for investigatory purposes), and *People v. Avery*, 180 Ill. App. 3d 146, 156, 534 N.E.2d

1296 (1989) (same). This factor does not support a finding of attenuation in this case.

Turning to the final attenuation factor, we look to see if there were any intervening circumstances in this case that would have severed the connection between defendant's incriminating statement and the prior illegal arrest. The trial court found there were sufficient intervening circumstances between the arrest and defendant's statement to make the statement sufficiently an act of free will. The court originally found the recovery by the police of the murder weapon, Buffen's statement to the police tying defendant to the gun, and the confiscation of defendant's jacket by the police all were intervening factors that purged the taint of his illegal arrest. However, upon defendant's motion for reconsideration, the trial judge acknowledged defendant's jacket, having earlier been suppressed as the fruit of an illegal arrest, could not be considered an intervening circumstance supporting attenuation. Nonetheless, the trial judge upheld his earlier finding of attenuation, reasoning that, even without the jacket, the gun and Buffen's statement were sufficient to purge any taint of illegality.

As a general rule, the confrontation of a suspect with new information, untainted by any illegality, may amount to an intervening circumstance that may produce a voluntary desire to confess and thereby support admission of a confession. *Foskey*, 136 Ill. 2d at 87; *White*, 117 Ill. 2d at 224. Thus, there are numerous decisions finding intervening circumstances supporting attenuation where the defendant was confronted *solely* with legally obtained inculpatory evidence before making a statement. See, *e.g., Foskey*, 136 Ill. 2d at 87; *People v. Lekas*, 155 Ill. App. 3d 391, 414, 508 N.E.2d 221 (1987); *People v. McFarland*, 161 Ill. App. 3d 163, 168-69, 514 N.E.2d 72 (1987); *People v. Bracy*, 152 Ill. App. 3d 566, 572, 504 N.E.2d 764 (1986); *In re R.S.*, 93 Ill. App. 3d at 946-47; *People v. Faulisi*, 51 Ill. App. 3d 529, 534, 366 N.E.2d 1072 (1977). The problem arises in cases such as this, where a defendant is confronted with *both* tainted and untainted evidence prior to incriminating himself.

In *People v. Turner*, 259 Ill. App. 3d 979, 631 N.E.2d 1236 (1994), the defendant was confronted both with knowledge his alibi had not checked out (untainted evidence) and with illegally seized bloody shoes (tainted evidence) prior to making an inculpatory statement to the police. In *People v. Bates*, 267 Ill. App. 3d 503, 642 N.E.2d 774 (1994), the defendant, prior to incriminating himself, was told a witness had implicated him in the crime under investigation. In addition to this untainted evidence, however, the defendant was also confronted with, in the same prestatement interview, illegally

obtained inculpatory evidence, including a gun, drugs, and a codefendant's statement. In both *Turner* and *Bates*, this court reversed the trial courts' denial of the defendants' motions to suppress their statements. Since it was likely the tainted evidence had been a factor in the defendants' decisions to make incriminating statements in both cases, this court could not find legitimate intervening circumstances existed that would have supported a finding of attenuation. *Turner*, 259 Ill. App. 3d at 991; *Bates*, 267 Ill. App. 3d at 506-07; see also *Austin*, 293 Ill. App. 3d 784, 688 N.E.2d 740 (following *Turner* and *Bates*).

In the present case, it is apparent three potentially intervening circumstances may have influenced defendant's decision to admit to the Merriwether shooting. First, defendant was fully aware the police had recovered the gun he had used to kill the victim earlier in the week. The recovery of the gun was undoubtedly untainted. Second, it appears defendant was informed Buffen had named him as the gun's owner. Buffen, having been observed with the gun and the obvious focus of suspicion, was questioned first by the detectives. After Buffen admitted defendant had given him the gun and the detectives realized Buffen was not wearing a jacket matching the description given by the witness to the murder, the detectives seized defendant's jacket and then questioned him about the gun. Detective Glynn testified he asked defendant "if in fact he had given the gun to DeMar Buffen." This question would certainly have suggested to defendant that Buffen had done exactly what defendant instructed him to do in the police car—give defendant up if questioned about the gun and the murder. Defendant then admitted to both the gun ownership and the earlier homicide. As there was nothing improper about Buffen's arrest and subsequent statement to the police, Buffen's statement was properly considered in assessing whether defendant's statement was attenuated from his illegal arrest.

A third event, however, also likely contributed to defendant's decision to incriminate himself—the illegal seizing of his coat by the police just prior to interrogating him. Admittedly, defendant was never "confronted," in the literal sense of the word, with the jacket, *i.e.*, he was never directly told a witness to the murder had identified the perpetrator as wearing the same exact jacket. Nevertheless, the illegal seizure of defendant's jacket occurred as he was being led into an interrogation room in which he would momentarily admit to shooting Merriwether, according to the testimony of the detectives. Moreover, the fact that defendant was observed wearing the jacket inside out suggests he was aware of the potentially incriminating nature of the jacket. *Cf. White*, 117 Ill. 2d at 225 (holding codefendant's mere pres-

ence in police station, absent any suggestion that the defendant believed or knew that his codefendant had implicated him in the crime, could not constitute an intervening circumstance); *Turner*, 259 Ill. App. 3d at 991 ("[I]f a defendant's *knowledge* that illegally seized evidence was recovered may have been a factor in his decision to confess, then suppression is proper") (emphasis added and omitted). The trial judge realized the import of the seizure of defendant's jacket in his original ruling on the attenuation issue; implicit in that ruling was a recognition that the seizure of the jacket just prior to defendant's statement was likely a factor in his decision to incriminate himself.

In reaching this decision, we do not suggest confrontation with tainted evidence will, in every case, preclude a finding of attenuation. We do not believe *Turner* and *Bates* were intended to be read so broadly. Certainly there will be cases where the extent of untainted evidence brought to bear upon a defendant prior to his making of a statement so outweighs his exposure to other, ill-gotten evidence that any effect of such tainted evidence on the defendant's decision to incriminate himself may reasonably be said to be *de minimis*. See *Gabbard*, 78 Ill. 2d at 98-100 (finding sufficient intervening circumstances in support of attenuation despite fact that, in addition to defendant's confrontation with untainted evidence, defendant was also informed, prior to confessing, that he had been identified in a concededly illegal lineup); *United States v. Green*, 523 F.2d 968, 972 (9th Cir. 1975) (where defendant was confronted with 800 pounds of lawfully seized marijuana and 400 pounds of unlawfully seized marijuana prior to confessing, defendant's confession would not be suppressed because role of suppressed evidence in producing confession was *de minimis*). However, we are unable to conclude, based upon the record before us, that the illegal seizure of defendant's jacket, moments before he incriminated himself, played a *de minimis* role in his decision to admit to killing Merriwether. Since both this factor as well as the flagrancy factor—the two most relevant factors in assessing attenuation—support the conclusion that defendant's statement was a product of his illegal arrest, we find the State did not meet its burden of proving attenuation and reverse defendant's conviction.

When determining whether the double jeopardy clause bars retrial of a defendant whose conviction has been reversed for evidentiary error, all evidence submitted at the original trial, including that which was erroneously admitted, may be considered in determining the sufficiency of the evidence against a defendant. *People v. Olivera*, 164 Ill. 2d 382, 393, 647 N.E.2d 926 (1995). Upon review of the record, including defendant's admissions, we find there was sufficient

evidence for the trier of fact to conclude defendant was guilty beyond a reasonable doubt.

For the foregoing reasons, we reverse defendant's conviction and remand for a new trial in which defendant's postarrest statements shall be suppressed. In light of this outcome, we do not address defendant's contention that the evidence at trial was insufficient to rebut his claim of self-defense.

Reversed and remanded.

COUSINS and GORDON, JJ., concur.