FIRST DIVISION

June 7, 2004

No. 1-01-3886

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. ) )

JERRY CLAY, ) Honorable

) John J. Moran,

Defendant-Appellant. ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court:

A jury found defendant, Jerry Clay, guilty of a first degree murder and an armed robbery that occurred at a currency exchange.  On appeal defendant argues that the trial court should have suppressed his confession because police lacked probable cause to arrest him.  We hold that the discovery of a wallet containing defendant's identification on the sidewalk outside the currency exchange did not give police probable cause to arrest him.  We remand for a hearing to determine whether intervening circumstances make the confession admissible despite the illegal arrest.  Defendant also argues that the trial court erred by allowing a witness to testify about an armed robbery at a different currency exchange five months before the robbery at issue.  We find the similarities between the two crimes insufficient to earmark the crimes as the work of the same man.  We reverse and remand for a new trial.

BACKGROUND

On December 22, 1998, around 10 a.m., three men entered a currency exchange together.  One asked for change for a dollar.  After receiving the change that man picked up the receiver of a pay phone in the exchange.  The other two men left the exchange, and the one who received change left shortly thereafter.  One of the three men returned a few minutes later.  He asked a different employee for change.  He received change and went to the pay phone.

Terry Madden, an employee of United Armored, carried a green bag with various papers and cash from an armored truck into the exchange.  The man who had gotten change met Madden at the door and fired a bullet point-blank through Madden's forehead.  The man took the green bag and left in a blue compact car.  Madden died minutes later.

Although several employees of the exchange saw the shooting, and one gave the shooter change, none could remember much about his appearance.  Witness described him only as "a male black about 25 to 30 years in age, between five-foot-seven to six-foot in height" wearing "a waist length jacket with blue jeans and *** a ski mask."  They described the men who entered the exchange with him only as "male blacks." 

Police found a wallet on the sidewalk near the exchange.  Inside, an officer found identification for defendant and a temporary permit for a Chevy van registered in the name of Theotis Coleman.  At the police station officers traced the address listed on the registration for the van.  Several officers set up surveillance near that address.

A white Mustang stopped near the address.  Two men and a woman got out of the car.  Around 2:30 p.m., defendant, with a woman and a child, left the address and got into a car.  Officers stopped the car nearby and asked defendant his name.  When he told them, they escorted him to a police department vehicle, which brought him to the police station.  At the station they found that defendant had more than $2,000 in cash and a set of keys.  Officers also arrested Roosevelt Clay as he drove away from the same address in a different car.  At the time of the arrest, Roosevelt had more than $8,000 in cash sewn into the lining of his jacket and bill of sale for a car.

After 9 p.m. that day, a state trooper found a black backpack on an expressway ramp.  Inside the backpack he found a green bag and some papers belonging to the currency exchange where the murder occurred.  He also found a letter addressed to Veronica Clay.

Police found the door to Veronica's apartment ajar.  When their knock elicited no answer, they entered.  They found Madden's keys inside.  They spotted a blue compact car parked near the building.  An officer contacted the registered owner of the vehicle, who told the officer she sold the car to Roosevelt Clay, and she intended to send him title once he completed the promised payments for the car.

Fifteen hours after the murder and eleven hours after the arrests, defendant admitted his involvement in the robbery.  He named Tony Williams as the murderer and Roosevelt as the getaway car driver.  Police arrested Williams on February 1, 1999, and Williams admitted his involvement in the robbery, but he named defendant as the shooter.

Williams, Roosevelt and defendant agreed to simultaneous trials.  One jury decided the case against Williams and a separate jury decided defendant's case, while Roosevelt opted for a bench trial.

Before trial defendant moved to quash arrest and suppress his statements.  The prosecution conceded that police arrested defendant when they took him from his car to the police vehicle for transport to the police station.  The arresting officer admitted that he did not see defendant violate any laws or ordinances prior to the arrest.  The officer testified that he found the wallet with defendant's identification on the street near the currency exchange shortly after the murder.  The prosecutor asked:

"Did you determine *** at that time that he fit the general description of one of the four male blacks that entered into that currency exchange at 10:00 in the morning?"

The officer said he so determined.  On cross-examination he clarified that witnesses described the men who entered the currency exchange as "three male blacks."  The officer did not testify to any further detail for any of the men other than the shooter.  The officer did not describe the clothing defendant wore when arrested, and he did not testify that defendant or his clothing matched the description of the shooter or the shooter's clothing.

The trial court held that the discovery of defendant's identification in a wallet outside the currency exchange gave police probable cause to arrest him.  Accordingly, the court decided to permit the prosecution to introduce evidence of statements defendant made to police while in custody.

The prosecution moved for leave to admit evidence of a second robbery at another currency exchange.  At the hearing on the motion, the prosecutor told the court that the prosecution would present evidence that on July 31, 1998, around 11 a.m., a currency exchange about two miles away from the exchange at issue received a cash delivery from United Armored.  Several minutes later three black males walked into the exchange.  One brandished a gun and announced a stick up.  They obtained cash from the currency exchange and escaped in a waiting car.  Ana Orona, an owner of the currency exchange, would identify defendant as the man who brandished the gun.  The court decided to allow the testimony into evidence as proof of defendant's 
modus operandi
.

Veronica testified that she stayed at her mother's home from December 17 through December 23, 1998, because she could not find her keys to her apartment.  She had last seen them during a visit at her mother's home, shortly before defendant came to the home.  She identified the keys found when police arrested defendant as her missing keys.  Defendant called Veronica from the jail and said he could go to jail if Veronica testified against him.

The detective who spoke with defendant at the police station testified that defendant said that on December 22, 1998, he and Roosevelt agreed with Williams and another man to commit a robbery.  Williams showed defendant one gun and gave defendant a different gun.  They took Roosevelt's car.  Williams directed them to the currency exchange. Defendant went into the exchange with Williams and the other man and made a phone call. Defendant left before the United Armored truck pulled up.  When he heard a shot he ran back to Roosevelt's car, dropping his wallet when he tripped on the sidewalk.  Williams gave defendant $6,500 and he gave Roosevelt $5,000 for driving the getaway car.

Orona testified that five months before the robbery in this case, on July 31, 1998, an armored truck from United Armored delivered cash to her currency exchange before 11 a.m.  A few minutes later, one of her employees arrived for work.  When he arrived, four customers were waiting in line.  One customer was a Hispanic male, a second was a Hispanic female, and the other two were black men.  As Orona went to unlock the door to the area for employees only, one of the black men grabbed the employee, pulled a gun and said, "[O]pen up, mother fucker, or I'll blow his head off."  The black man pushed the employee into the employees' area and said, "[G]ive it up, mother fucker, give it up."  He then pointed the gun at Orona and said, "[H]urry up, mother fucker, or I'll blow her head off."  The employee loaded a bag with cash.  The robber took the money and left.  Following defendant's arrest in December 1998, Orona saw his picture on television.  She recognized him as the man who robbed her.  She identified him again in court as the robber.

The court instructed the jury on legal accountability for acts of another.  The jury found defendant guilty of murder and armed robbery.

The court held a joint sentencing hearing for the three defendants.  Defendant had one prior conviction for misdemeanor assault.  The trial judge sentenced defendant and Williams to 50 years in the custody of the Department of Corrections and 30 years for armed robbery, with the sentences to run concurrently.  The judge imposed on Roosevelt concurrent sentences of 30 years on each of the charges.  Although the judge discussed the evil of the murder, he gave no reason for the differences in the sentences imposed.

On appeal defendant argues that the trial court erred by finding that police had probable cause to arrest him.  We review the trial court's findings of fact only for clear error, but we review 
de novo
 the ultimate determination of probable cause based on those facts.  
People v. Boomer
, 325 Ill. App. 3d 206, 209 (2001).  Police have probable cause to arrest a defendant when the available evidence would lead a reasonable person to believe that a crime occurred and the defendant committed it.  
People v. McCoy
, 238 Ill. App. 3d 240, 247 (1992).

The officer found the wallet with defendant's identification outside of the exchange.  The wallet also held a temporary permit for a van.  At the address listed on the van's registration, the officer "saw the defendant who fit the description" of one of the persons at the currency exchange.  On that factual basis the court concluded that the officer had probable cause to arrest defendant.

The wallet found outside the exchange provided evidence leading a reasonable person to believe that defendant had been near the exchange.  Because a wallet probably would not long lie unmolested on the sidewalk, police had cause to believe defendant had been near the currency exchange near the time of the murder.  Police also found several other persons who had been on the street near the exchange at the time of the murder, and some of those persons testified about what they saw.  Evidence of proximity to the scene of a crime - especially on a public street - does not generally provide police probable cause to arrest.  
People v. Haymer
, 154 Ill. App. 3d 760, 768 (1987); compare 
People v. Summers
, 100 Ill. App. 3d 170, 174-75 (1981) (evidence that the defendant was in the victim's apartment near the time of the murder in that apartment, along with evidence that the defendant knew the victim and the apartment showed no sign of forced entry, gave police probable cause to arrest the defendant).

The arresting officer testified that defendant also matched the description of one of the offenders.  He clarified on cross-examination that witnesses described the offenders with the shooter only as "three male blacks."  The prosecution claims that defendant matched the description of the shooter and that vague description at least included some minimal indication of the offender's clothing.  But the officer never testified that defendant matched that description, and the officer never described the clothing defendant wore at the time of the arrest.  Most notably, while witnesses described the getaway car, police did not find that car when they arrested defendant, and no car matching its description was on the street where officers conducted surveillance waiting to see who went to the address listed on the van's registration.

Thus, at the time of the arrest police had evidence that three black men entered a currency exchange and committed a robbery and murder there, and defendant, a black man, probably passed on the sidewalk near the currency exchange around the time of the murder, at midmorning on a busy street.  While police knew a crime occurred, reasonable persons would not find the evidence enough to support a belief that defendant committed it.  We hold that police lacked probable cause to arrest defendant.  See 
People v. Washington
, 269 Ill. App. 3d 862, 866-67 (1995); 
People v. Williams
, 53 Ill. App. 3d 266, 272-73 (1977).

The prosecution suggests that the court committed only harmless error by admitting into evidence the statements defendant made implicating himself in the murder.  Because confessions frequently constitute the most persuasive evidence against a defendant, "the admission of an unlawfully obtained confession rarely is harmless error."  
People v. St. Pierre
, 122 Ill. 2d 95, 114 (1988).  No witness could identify defendant as a perpetrator.  Apart from defendant's statements, only equivocal circumstantial evidence tied him to the crime.  If the court erred by permitting defendant's statements into evidence, we cannot find the error harmless under the circumstances of this case.

The prosecution asks us to remand for an attenuation hearing.  Because several events intervened between the illegal arrest and defendant's statements, we agree that the trial court should hear evidence to determine whether to admit defendant's statements into evidence.  The court should consider the evidence in light of our supreme court's recent opinion on attenuation, 
People v. Morris
, No. 87645 (March 18, 2004).

Next, defendant argues that the trial court committed reversible error by allowing Orona to testify concerning the robbery of a different currency exchange.  The prosecution counters that the trial court properly admitted the evidence under the 
modus operandi
 exception to the general principle disallowing evidence of other crimes.  
People v. Jackson
, 331 Ill. App. 3d 279, 285-86 (2002).

"The 
modus operandi
 or 'method of working' exception refers to a pattern of criminal behavior so distinct that separate offenses are recognized as the work of the same person. [Citation.] Between the offense offered to prove 
modus operandi
 and the offense charged, there must be a clear connection which creates a logical inference that, if defendant committed the former offense, he also committed the latter. [Citation.]  This inference arises when both crimes share peculiar and distinctive features not shared by most offenses of the same type and which, therefore, earmark the offenses as one person's handiwork. [Citation.]  The offenses need not be identical but must share features which, although common to similar crimes in general, are distinctive when considered together."  
People v. Berry
, 244 Ill. App. 3d 14, 21 (1991).

We will not reverse the trial court's decision to admit evidence unless the court abused its discretion.  
People v. Illgen
, 145 Ill. 2d 353, 364 (1991).

Defendant argues that we should compare Orona's testimony at trial with the testimony concerning the robbery charged to determine whether Orona's testimony shows a 
modus operandi
.  The prosecution insists that we must ignore the actual testimony and evaluate the court's decision on the basis of the representations made to the court at the pretrial hearing on the motion to admit other crimes evidence.  That is, we should compare only the evidence the prosecution said it would present concerning the other crime with the evidence the prosecution said it would present about the crime charged.  Neither party cites pertinent authority on the issue of what evidence or representations we should consider.

Although we found no case discussing the precise issue before us, we find some guidance in cases concerning the evidence to consider on review of motions to suppress statements.  In 
People v. Brooks
, 187 Ill. 2d 91 (1999), the defendant argued that the evidence introduced at trial showed that the trial court should have suppressed his statements.  In support of his reliance on trial evidence, the defendant cited 
People v. Braden
, 34 Ill. 2d 516 (1966), and 
People v. Reese
, 92 Ill. App. 3d 1112 (1981).  Our supreme court responded:

"[i]n these cases, the courts relied on trial testimony to 
affirm
 the trial court's denial of a motion to suppress. Defendant is asking us to 
overturn
 the trial court's ruling on the motion to suppress based on evidence that came out at trial.

The analysis is different in this situation. When a reviewing court affirms a trial court's suppression ruling based on evidence that came out at trial, it is akin to a harmless error analysis. The reviewing court is essentially saying that whether the court's decision was supported by sufficient evidence at the suppression hearing becomes irrelevant when evidence to support the trial court's decision is introduced at trial. One reason this is so is that the pretrial ruling on a motion to suppress is not final and may be changed or reversed at any time prior to final judgment. [Citation.] We do not believe that this reasoning applies equally when a defendant is asking us to rely upon trial evidence to reverse a trial court's decision on a pretrial suppression ruling, particularly when the defendant fails to object when the relevant evidence is introduced. *** By not asking the court to reconsider its ruling on the motion to suppress when that evidence was introduced at trial, defendant has waived his right to argue it on appeal." (Emphasis in original.)  
Brooks
, 187 Ill. 2d at 127-28.

Here, too, the court could have changed its pretrial ruling, especially in light of the differences between Orona's actual testimony and the prosecutor's pretrial representations about the evidence the prosecution would introduce at trial. Defendant here, like the defendant in 
Brooks
, failed to request reconsideration of the pretrial ruling after the testimony at trial.  Thus, defendant waived argument that the evidence at trial showed that the court should not have admitted the evidence of the other crime.  Of course, the waiver constrains defendant, but it does not bar this court from considering the issue if necessary to reach a just result.  
People v. Hicks
, 181 Ill. 2d 541, 544-45 (1998); 
People v. Bailey
, 159 Ill. 2d 498, 506 (1994).

At the pretrial hearing the prosecutor sought leave to present evidence at trial concerning a robbery that occurred about five months before the robbery charged, at a currency exchange about two miles away.  The prosecutor claimed the evidence would show that three black men entered the currency exchange shortly after United Armored completed a cash delivery there.  One of the men announced a stick up and brandished a gun, while the two others remained in the exchange looking out for police.  Orona would identify defendant as the man with the gun.  The men then fled to a waiting car the prosecutor did not describe.

For the crime charged the prosecution promised to show that defendant and two other black men entered the exchange some time before United Armored delivered cash to the exchange.  The men left and one returned to stand by the telephone as though making a call.  When Madden entered with the cash delivery the man by the telephone went to the door and shot Madden without saying a word.  He took the bag of cash and left in a blue car.

Thus, on the prosecutor's representations, the crimes appeared somewhat similar.  Both occurred at currency exchanges around the time of a delivery from United Armored, in the same part of the city.  The prosecutor said both crimes involved four offenders, with two lookouts and a getaway driver assisting the one who used a gun to rob someone.  However, the crimes had striking differences.  In the first robbery, the offenders entered after the deliveryman successfully completed the delivery, leaving the money with the exchange's owner.  The robbers then announced a stickup to get the money.  In the second robbery the robbers said nothing to the victim.  One shot him and took the cash.  The victim worked for United Armored, not the currency exchange.  In the first robbery the two lookouts stayed in the exchange, according to the prosecutor; in the second robbery, all but the robber left the exchange before the robbery.  The prosecutor did not say that any witnesses described the guns or cars in ways that would lead to the conclusion that the robbers used the same guns or cars in the two robberies.

In 
People v. Tate
, 87 Ill. 2d 134 (1981), a man tried to shoplift meat from a supermarket by putting it inside his coat.  When a security guard confronted him, he threw the meat down, and in the ensuing struggle, he grabbed the guard's gun.  Three months later, a man tried to shoplift meat from a nearby supermarket by hiding it inside his coat.  A police officer followed the man out of the store.  When the officer confronted him the man threw the meat down, and during the ensuing struggle he grabbed the officer's gun.  Our supreme court held that the evidence did not show a 
modus operandi
:

"[P]utting meat inside one's clothes is a standard shoplifting technique, as is grabbing for a gun during a struggle. Contrary to the above cases, there are no distinctive features to serve as a link between the two offenses, such as using similar weapons, dressing the same, acting with the same number of people, or even a distinctive method of committing this particular offense. Although the similarities need not be unique only to the two offenses being compared, there must be present some distinctive features that are not common to most offenses of that type in order to demonstrate 
modus operandi
."  
Tate
, 87 Ill. 2d at 142-43.

Just as the similarities in 
Tate
 did not sufficiently support an inference that the same man committed the two crimes, the similarities here do not earmark the two robberies as the work of the same individuals.  The use of guns and cars in both crimes does not identify the two robberies because offenders committing offenses of this type commonly use guns and escape in cars.  See 
Tate
, 87 Ill. 2d at 142; 
Jackson
, 331 Ill. App. 3d at 287.  Lookouts and getaway drivers also commonly assist in robberies of commercial establishments.  
E.g.
, 
People v. Massa
, 271 Ill. App. 3d 75, 79 (1995).  The five-month lapse between the two crimes here exceeds the three-month gap in 
Tate
.  The only significant similarity is the fact that both crimes occurred around the time of a delivery from United Armored.  But salient differences offset that similarity: one crime occurred after delivery and the robber announced a stickup of persons working for the exchange, while the other occurred before delivery and the robber shot the deliveryman without saying a word to him.  We find that the trial court abused its discretion by permitting Orona to testify concerning the prior crime.

The evidence presented at trial showed the crimes were much less similar than the prosecution told the court.  Although the prosecutor told the court four persons participated in the first robbery, Orona testified that one man, acting alone, robbed her currency exchange.  The prosecutor presented no evidence that the man who robbed Orona's currency exchange used a getaway car.  Also, the man who robbed that exchange effectively took Orona's employee hostage to get her to turn over the cash.  The robbery charged involved no words at all, let alone hostages.  We could address the issue waived by defense counsel, of the many dissimilarities reflected by the evidence adduced at trial, either to reach a just result or as an indication of ineffective assistance of counsel.  But we find no need to resort to the evidence at trial.  The prosecutor's pretrial representations about the evidence the prosecution would present reflected enough significant dissimilarities that the court should not have admitted the evidence of the other crime as proof of a 
modus operandi
.

The prosecution suggests the evidence could be admissible to prove defendant's intent, motive, knowledge, or absence of an innocent state of mind.  The defense did not place the robber's intent, motive or knowledge at issue and did not suggest the murderer had an innocent state of mind.  See 
People v. Thigpen
, 306 Ill. App. 3d 29, 37 (1999).  The evidence concerning the murder completed proof of all those issues; the evidence of the other crime added only considerable prejudice against defendant, without probative value.  See 
People v. Biggers
, 273 Ill. App. 3d 116, 122 (1995).  The prosecution also adds, perfunctorily, that the evidence of the earlier crime helps identify defendant as the perpetrator of the crime at issue.  The prior crime shows nothing about defendant's presence in the area or his use of the blue car seen at the murder scene.  See 
People v. Hayes
, 319 Ill. App. 3d 810 (2001).  The only basis for the use of the prior crime to identify defendant as the perpetrator here is the supposed proof of 
modus operandi
.  The crimes lack sufficient similarity to warrant the inference that the same person must have committed both crimes.

Finally, the prosecution contends that any error in the use of other crimes evidence was "harmless beyond a reasonable doubt."  But "erroneously admitted other crimes evidence carries a high risk of prejudice and ordinarily calls for reversal."  
People v. Howard
, 303 Ill. App. 3d 726, 732 (1999).  No witness identified defendant as appearing in the vicinity of the crime, and no forensic evidence tied him to any of the documents taken from the currency exchange.  While defendant's confession may provide highly persuasive evidence, we cannot conclude that the confession, if it is admissible, will render the evidence of other crimes harmless.

We choose not to address other issues defendant raises because we expect them not to arise again on remand.  The trial court should appropriately circumscribe the life and death evidence to eliminate highly prejudicial and irrelevant personal information concerning the victim.  See 
People v. Lewis
, 165 Ill. 2d 305, 330 (1995).  The court must likewise restrict the prosecutor's closing argument to remarks based on the evidence.  
People v. Kliner
, 185 Ill. 2d 81, 151 (1998).

The discovery of a wallet with defendant's identification on the sidewalk near the currency exchange may have provided grounds for police to question him, but it did not provide probable cause to arrest, even when combined with the fact that defendant was, like all of the offenders, a black man.  We remand for a determination of whether intervening circumstances served to attenuate defendant's statements from the illegal arrest.  The prior robbery of a currency exchange some miles away from the robbery here did not bear sufficient similarity to the crime charged to show 
modus operandi
.  We cannot say that the evidence of the other crime had no effect on the outcome of the trial.  Therefore, we reverse the convictions.  Because defendant does not challenge the sufficiency of the evidence, we remand for a new trial.

Reversed and remanded.

GORDON and McBRIDE, JJ., concur.