# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Simpson, 2013 IL App (1st) 111914**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCEL SIMPSON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-1914 |
| Filed<br>Rehearing denied | June 19, 2013<br>July 17, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's murder conviction was reversed and the cause was remanded for a new trial where his counsel's failure to object to the trial court's decision to allow the jury to view a video recording of a witness telling the police that defendant confessed, since the failure to object was objectively unreasonable, especially in view of the "extreme probative weight" of a confession, the absence of any physical evidence connecting defendant to the crime scene, and the reasonable likelihood that an objection would lead to a better result for defendant. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-13757; the Hon. Thomas V. Gainer, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Megan E. Ledbetter, all of
State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary
Needham, and William L. Toffenetti, Assistant State's Attorneys, of
counsel), for the People.

Panel

PRESIDING JUSTICE NEVILLE delivered the judgment of the court,
with opinion.

Justices Hyman and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1        A jury found Marcel Simpson guilty of murder. On appeal, Simpson contends that he did
not receive effective assistance of counsel because his attorney failed to object when the
court permitted the jury to watch a video recording of a witness telling police that Simpson
confessed to the murder. We find counsel's failure to object objectively unreasonable, and
we find a reasonable probability that Simpson would have achieved a better result if his
counsel had objected to the evidence. Therefore, we reverse the conviction and remand for
a new trial.

¶ 2                                    BACKGROUND

¶ 3        In February 2006, Phillip Thomas fought Dwayne Powell and knocked out several of
Powell's teeth. On May 8, 2006, Jesse Rucker saw Thomas running down an alley, chased
by two men running and two cars. The running men caught Thomas and others leapt from
the two cars to join in a savage beating. Rucker called police. Thomas died from the blows
that caused five comminuted fractures to his head. Rucker identified Powell in a photo array
as one of the men who chased and killed Thomas.

¶ 4        On May 14, 2006, police brought Rucker back to the police station to view a lineup.
Rucker identified Antonio Morris, Larron Wallace and Marcel Simpson as men who beat
Thomas on May 8, 2006. In October 2007, Dwayne Thompson, in jail on an unrelated
charge, signed a statement about the beating. Prosecutors charged Simpson, Morris, Wallace
and Johnny Graves with first degree murder. Graves agreed to testify against Simpson and
Morris, and to plead guilty to conspiracy to commit murder, in exchange for the State's
recommendation of a sentence of 14 years in prison for Graves.

¶ 5        A single jury heard the case against Simpson and Morris. Rucker testified that he saw six
men beat Thomas with a wooden bat and a metal bar. A photograph accurately depicted the
lineup Rucker saw on May 14, 2006. He identified Simpson and Morris in the photograph

as persons he saw in the group that beat Thomas to death. However, Rucker could not identify either Simpson or Morris in court as a person he saw beating Thomas. Rucker, who was 74 years old, admitted that he "can't see that good."

¶ 6    An investigator testified for the defense that Rucker's window was 164 feet away from the site of the beating. When the investigator interviewed Rucker, Rucker said he was 90% sure he correctly picked out the offenders in the police lineup.

¶ 7    Graves testified that on May 8, 2006, he rode with Morris as they took Simpson to a store. Graves saw Thomas getting off the "el." Graves knew Thomas had beaten up Powell, a friend of Graves, Morris and Simpson. Morris made a phone call while Graves went into the store to find Simpson. Graves, Simpson and Morris searched the neighborhood looking for Thomas. They met Thompson, Powell and Wallace in a car Thompson's girlfriend owned. Graves spotted Thomas again, and Simpson and Powell got out of the cars and chased Thomas, with the cars joining the chase. When he got close, Simpson threw a metal bar at Thomas. Graves got out of the car and started hitting Thomas, who fell. Graves, Simpson, Morris, Thompson, Wallace and Powell struck Thomas repeatedly with the bar and the bat, and then they left the area in two cars.

¶ 8    Thompson admitted that he rode with Wallace in his girlfriend's car on May 8, 2006, and they met Morris driving his car. However, Thompson testified that he did not see anyone running, he saw no beating, and he did not say most of the things attributed to him in the written statement he signed at the police station.

¶ 9    The court allowed an assistant State's Attorney to read to the jury the statement that Thompson signed in jail in 2007. According to that statement, on May 8, 2006, Wallace received a phone call while driving Thompson's girlfriend's car. Wallace told Thompson Graves had called and said they saw Thomas nearby. Wallace and Thompson drove to meet up with Simpson, Morris, Graves and Powell. On the way, they saw Simpson and Powell chasing Thomas through an alley, with Morris, driving his car, also involved in the chase. Thompson got out of the car and watched Simpson and Morris beating Thomas. Simpson bashed Thomas's head with a bat, hitting it so hard, it sounded "like a turtle shell cracking." The State did not charge Thompson for his role in the crime.

¶ 10    Vonzell Franklin testified that late in the afternoon on May 8, 2006, he met Simpson on the street. Franklin did not remember what Simpson said to him, but he remembered that he talked to the police later about what Simpson said. Franklin did not remember what he said to the police. He agreed that he probably told the police he saw Simpson talking with Shinesha Houston in an alley, and he agreed that he told the police Simpson said he "caught that n*** Phil."

¶ 11    The prosecution then introduced into evidence, without objection, a video recording of Franklin talking to the police at the police station. In that recording, Franklin told the police what Simpson said to him, "we beat the fuck out that n*** man I think he dead," and "we bashed his head in[.] I hit him about 30 times with that bat." Later, Franklin added that Simpson said, "these n***s acting all soft *** and I think I'm gonna have to snatch the bat from these n***s."

¶ 12    Houston testified for the defense that she did not speak with Simpson in any alley on May

8, 2006, and she did not see Franklin speak with Simpson.

¶ 13    In closing argument, the prosecutor played the video recording of Franklin again, without objection. The prosecutor commented:

> "Thirty times. He's not only telling him. He's boasting about it, bragging about it. This is what we did. Thirty times. Those other guys was soft. This is what we did, what I did. Thirty times.

\* \* \*

> Again, Simpson told Vonzell Franklin about boasting thirty times."

¶ 14    The jury found Morris and Simpson guilty of first degree murder. The trial court sentenced Simpson to 36 years and 6 months in prison. Simpson now appeals. Morris separately appealed, and a different panel of this court will review his appeal.

¶ 15                                         ANALYSIS

¶ 16    Simpson raises only one issue on appeal. He contends that his attorney provided ineffective assistance by failing to object to the presentation to the jury of the video recording of Franklin's discussions with police. To show ineffective assistance of counsel, Simpson must show that "his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Patterson*, 192 Ill. 2d 93, 107 (2000).

¶ 17    The State concedes that, if defense counsel had objected to the recording, the court should not have admitted it to impeach Franklin, because Franklin's testimony did not affirmatively damage the State's case. See *People v. Cruz*, 162 Ill. 2d 314, 359-60 (1994). However, the State contends that the trial court correctly permitted the jury to hear the recording, under section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.1 (West 2010)), because Franklin said Simpson admitted that he killed Thomas.

¶ 18    Section 115-10.1 of the Code provides that the trial court may admit evidence of a prior inconsistent statement by a witness, if the prior statement "narrates, describes, or explains an event or condition of which the witness had personal knowledge." 725 ILCS 5/115-10.1(c)(2) (West 2010). For a witness's out-of-court statement to satisfy the personal knowledge requirement, the witness must have actually seen the events that form the subject matter of the statement. *People v. McCarter*, 385 Ill. App. 3d 919, 930 (2008). Here, the State used Franklin's out-of-court statements as evidence that Simpson struck Thomas repeatedly with a bat. Because Franklin had no personal knowledge concerning the substance of the statements the State put in evidence, section 115-10.1 leaves Franklin's out-of-court statements inadmissible. See *People v. Donegan*, 2012 IL App (1st) 102325, ¶ 34; *People v. Wilson*, 2012 IL App (1st) 101038, ¶¶ 39-40. Accordingly, we find that if defense counsel had objected, the court should not have admitted Franklin's video recorded statements into evidence.

¶ 19    The State has not suggested any possible strategic reason for defense counsel's failure

to object to Franklin's out-of-court statements to police. Franklin told police that Simpson confessed to the crime. Confessions have special persuasive force. *People v. R.C.*, 108 Ill. 2d 349, 356 (1985). Moreover, the confession here highlights Simpson's brutality and his role as a leader of the men who beat Thomas. We see no possible strategic purpose for counsel not to object to the video recording of Franklin's statements to the police. Simpson has shown that his attorney's representation fell below an objective standard of reasonableness.

¶ 20    In asking us to affirm the conviction, the State relies on its argument that the video recording of Franklin's statements had no prejudicial effect. Apart from the evidence of Simpson's confession to Franklin, the State presented testimony from Rucker and Graves, and Thompson's out-of-court statement. Rucker testified that he witnessed the beating and he identified photographs of Simpson and Morris as pictures of persons he saw participating in the beating. However, Rucker, a 74-year-old man, watched the beating from more than 150 feet away, admitted his eyesight was not good, and could not identify either Morris or Simpson in court as a person he saw beating Thomas.

¶ 21    Graves and Thompson both testified as accomplices promised great benefits by the State. The State never charged Thompson for his participation in the beating, even though Rucker swore he saw six men beating Thomas, and Graves identified Thompson as one of those six. Graves received a sentence of 14 years for his participation in the murder, and with good conduct credit, he expects to spend less than 7 years in prison for the offense. Our supreme court has emphasized that triers of fact should view the testimony of accomplices with suspicion and accept it only with great caution, especially when a promise of leniency or immunity induced the testimony. *People v. Newell*, 103 Ill. 2d 465, 470 (1984); *People v. Wilson*, 66 Ill. 2d 346, 349 (1977).

¶ 22    The erroneous admission of a confession into evidence rarely constitutes harmless error because confessions generally carry "extreme probative weight" (*People v. St. Pierre*, 122 Ill. 2d 95, 114 (1988)), and they "frequently constitute the most persuasive evidence against a defendant" (*People v. Clay*, 349 Ill. App. 3d 24, 30 (2004); see also *People v. Agyei*, 232 Ill. App. 3d 546, 554 (1992)). Here, no physical evidence tied Simpson to the crime scene. A rational trier of fact could disbelieve both of the accomplices and find Rucker's ability to see, at 74 years old, sufficiently suspect to leave a reasonable doubt concerning Simpson's guilt. Simpson has established a reasonable likelihood that he would have achieved a better result if his counsel had objected to the video recording of Franklin's statements to the police. Finally, Simpson admits that the State presented sufficient evidence to sustain the conviction, so a remand for retrial will not violate Simpson's right to avoid double jeopardy. See *People v. Wheeler*, 226 Ill. 2d 92, 134 (2007).

¶ 23                                        CONCLUSION

¶ 24    Simpson has shown that his attorney provided objectively unreasonable assistance when he failed to object to the admission into evidence of a video recording in which Franklin told police that Simpson had told Franklin Simpson killed Thomas. Simpson has also established a reasonable likelihood that he would have achieved a better result if counsel had not erred.

Accordingly, we reverse the conviction and remand for a new trial.

¶ 25    Reversed and remanded.