# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
Plaintiff, )
)
v. ) Cr. A. No. 1912029331;
) 1912028560; 1912028616
MICHAEL EDELIN, )
)
Defendant. )
)

Date Submitted: June 4, 2021
Date Decided: June 30, 2021

*Upon the State's Motion in Limine*
**DENIED.**

## ORDER

James K. McCloskey, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

John S. Edinger, Esquire, Assistant Public Defender, Office of Defense Services, Wilmington, Delaware, Attorney for Defendant Michael Edelin.

**SCOTT, J.**

## INTRODUCTION

Before the Court is the State of Delaware's (the "State") Motion *in Limine* pursuant to Delaware Rule of Evidence 404(b) (the "Motion"). After reviewing the Motion and Defendant Michael Edelin's ("Mr. Edelin") Response, the State's Motion is **DENIED**.

## BACKGROUND

Mr. Edelin is accused of robbing three banks in various locations in December of 2019. Mr. Edelin is charged by Indictment with one count of Robbery First Degree, two counts of Robbery in the Second Degree, and two counts of Wearing a Disguise During the Commission of a Felony.

The State seeks to introduce evidence of Mr. Edelin's prior criminal record for purposes of establishing his (1) identity, (2) intent, and (3) knowledge of the banks and dye packs. The relevant inquiry here, in weighing the probative value and prejudicial effect of introducing such evidence, is whether the facts rise to the threshold of indicating a clear pattern of conduct attributable only to Mr. Edelin.

On March 30, 2015, Mr. Edelin pled guilty to Robbery First Degree and Robbery Second Degree in connection with a string of robberies that took place in 2014. On June 26, 2015, the Court sentenced Mr. Edelin, effective July 2, 2014, to six years in prison followed by decreasing levels of probation.

1

On October 6, 2008, Mr. Edelin pled guilty to two counts of Robbery First Degree and two counts of Robbery Second Degree in connection with a string of robberies that took place in 2007-08. On December 5, 2008, the Court sentenced Mr. Edelin to a total of six years in jail followed by decreasing levels of probation.

The State seeks to connect the dots from those robberies to the instant string of robberies that Mr. Edelin is accused of committing by introducing, for purposes of establishing his identity, intent, and knowledge of the banks and dye packs, evidence that involves: (a) location of the banks, (b) disguises (c) demand notes, and (d) and information relating to Mr. Edelin's experience with dye packs.

**A. Location of the Banks**

On December 5, 2019, the Citizens Bank located within the Acme at 1 University Plaza in Newark, Delaware ("Newark Citizens Bank").[1]

On June 26, 2014, the Newark Citizens Bank was robbed.[2] Mr. Edelin pled guilty to robbing this bank.

On December 12, 2019, the Citizens Bank located at 919 N. Market Street, Wilmington, DE ("Wilmington Citizens Bank") was robbed.[3] Mr. Edelin pled guilty to robbing this bank.

---

[1] State's Mot. at p. 2.
[2] *Id.* at p. 8.
[3] State's Mot. at p. 3.

On September 4, 2007, the Wilmington Citizens Bank was robbed.[4] Mr. Edelin pled guilty to robbing this bank.

On December 18, 2019, the M&T Bank located at 287 Christiana Road in New Castle, Delaware was robbed ("New Castle M&T Bank").[5]

On March 25, 2014, the New Castle M&T Bank was robbed.[6] Mr. Edelin pled guilty to robbing this bank.

On May 19, 2014, the New Castle M&T Bank was robbed.[7] Mr. Edelin pled guilty to robbing this bank.

On February 22, 2008, the Wilmington Trust Bank located at 287 Christiana Road in New Castle, Delaware was robbed ("New Castle Wilmington Trust Bank").[8] Mr. Edelin pled guilty to robbing this Bank. Noteworthy, the New Castle Wilmington Trust Bank is now the New Castle M&T Bank that Mr. Edelin is accused of robbing in 2019.

On March 1, 2008, the New Castle Wilmington Trust Bank was robbed.[9] Mr. Edelin pled guilty to robbing this bank.

---

[4] *Id.* at p. 9.
[5] *Id.* at p. 4.
[6] *Id.* at p. 6.
[7] *Id.*
[8] *Id.*
[9] *Id.*

On January 11, 2008, the PNC Bank located in Wilmington, Delaware was robbed ("Wilmington PNC Bank").[10] Mr. Edelin pled guilty to robbing this bank.

On January 29, 2008, the Wilmington PNC Bank was robbed. Mr. Edelin pled guilty to robbing this bank.

On March 12, 2008, the Wilmington Trust Bank located at 1001 N. Market Street in Wilmington, Delaware was robbed. ("Wilmington Trust Bank in Wilmington").[11] The Wilmington Trust Bank in Wilmington, located at 1001 N. Market, is now a M&T Bank and is located across the street from the Wilmington Citizens Bank.

**B. Disguises**

On December 5, 2019, the Newark Citizens Bank was robbed by a suspect wearing "all black with a black hood pulled tight around his face."[12]

On June 26, 2014, the Newark Citizens Bank was robbed by "a black male wearing a black winter hat and sunglasses."[13]

On December 12, 2019, the Wilmington Citizens Bank was robbed by a "black male with a black and gray goatee wearing all black and a black knit hat."[14]

---

[10] *Id.* at p. 9
[11] *Id.* at p. 11.
[12] State's Mot. at p. 2.
[13] *Id.* at p. 8.
[14] State's Mot. at p. 3.

On September 4, 2007, the Wilmington Citizens Bank was robbed by "a black male wearing a baseball hat pulled down to just above his eyes and a dark t-shirt."[15]

On December 18, 2019, the New Castle M&T bank was robbed by "a black male wearing all black and a hood pulled tightly around his face."[16]

On March 25, 2014, the New Castle M&T Bank was robbed by "a black male wearing a black knit hat, hooded sweatshirt with the hood up, and dark pants."[17]

On May 19, 2014, the New Castle M&T Bank was robbed by "a black male wearing glasses."[18]

On February 22, 2008, the New Castle Wilmington Trust Bank was robbed by "a black male wearing a black knit hat and black jacket."[19] This Bank and since changed and is now the New Castle M&T Bank.

On March 1, 2008, the New Castle Wilmington Trust Bank was robbed by "a black male wearing a black knit hat."[20]

On January 11, 2008, the Wilmington PNC Bank was robbed by "a black male wearing a baseball hat."[21]

---

[15] *Id.* at p. 9.
[16] *Id.* at p. 4.
[17] *Id.* at p. 6.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at p. 9

On January 29, 2008, the Wilmington PNC Bank was robbed by "a black male wearing a blue hooded sweatshirt."

On March 12, 2008, the Wilmington Trust Bank in Wilmington was robbed by "a black male wearing a dark jacket."[22]

## C. Demand Notes and Comments

On December 5, 2019, the Newark Citizens was robbed by a suspect who used a note that allegedly stated "give me all your cash or I will shoot you."[23]

On June 26, 2014, the same Citizens Bank was robbed by a suspect who used a note that stated "just give me all the money Right Now!"[24]

On December 12, 2019, the Wilmington Citizens Bank was robbed by a suspect who used a note that stated "Give me all the money."[25]

On September 4, 2007, the same Citizens Bank was robbed by a suspect who used a note that stated "Put money on counter no one gets hurt."[26]

---

[22] *Id.* at p. 11.
[23] *Id.* The suspect fled with the demand note, however the bank teller described to Delaware State Police what the note said.
[24] *Id.*
[25] *Id.*.
[26] *Id.* at p. 9.

On December 18, 2019, the New Castle M&T bank was robbed by a suspect who used a note that stated "GIVE ME ALL THE MONEY."[27] The suspect then stated "you know what's going on."[28]

On March 25, 2014, the same M&T Bank was robbed by a suspect who used a note that stated "give me all your money."[29]

On May 19, 2014, the same M&T Bank was robbed by a suspect who used a note that stated "give me all of your money now."[30] The suspect told the teller "don't do anything funny, I have a gun and don't want to hurt anybody, and don't hand me no packs or dye."[31]

On February 22, 2008, the New Castle Wilmington Trust Bank, now operating as the aforementioned New Castle M&T Bank, was robbed by a suspect who used a note that stated "I don't care about alarms or guards, loose bills have a gun!"[32]

---

[27] *Id.*
[28] *Id.*
[29] *Id.* at p. 7.
[30] *Id.*
[31] *Id.*
[32] *Id.* at p. 10.

On March 1, 2008, the same Wilmington Trust Bank, now operating as the aforementioned New Castle M&T Bank, was robbed by a suspect who used a note that stated "I have a gun, I will use it, give me all the loose bills no body get hurt."[33]

On January 11, 2008, the PNC Bank located in Wilmington, Delaware was robbed by a suspect approached the teller with a demand note. The content of the demand note is unknown.

On January 29, 2008, the same PNC Bank was robbed by a suspect who used a note that stated "I don't care about the guard or the camera I have a gun and I will use it give me all the loose bills."[34] The suspect then verbally stated, "come on, Miss Danika, we don't have all day."[35]

On March 12, 2008, the Wilmington Trust Bank in Wilmington was robbed by "a black male wearing a dark jacket."[36] The suspect approached the teller with a demand note that stated "I have a gun I will use it. Give me all the loose bills now."[37]

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at p. 11.
[37] *Id.*

**D. Dye Packs**

In the 2019 Wilmington Citizens Bank robbery, the suspect there noticed a dye pack contained within the bag of money obtained from the bank teller and left it on the counter.

In the second 2014 New Castle M&T Bank robbery, of which Mr. Edelin pled guilty to, Mr. Edelin presented a demand note that stated "don't have me no packs or dye."

In the 2008 Wilmington Trust Bank in Wilmington robbery, of which Mr. Edelin pled guilty to, Mr. Edelin was caught in large part due to the presence of a dye pack included within the bag full of stolen money. Officers responding to the Wilmington Trust robbery observed a cloud of red smoke coming from a trash can on 10th street near the Wilmington Library. The officers entered the Wilmington Library. In one bathroom, the officers found traces of the red dye in the bathroom sink and U.S. currency covered in red ink in the trash can. Officers then proceeded to the second floor of the Wilmington Library and found Mr. Edelin covered in red ink.

## STANDARD OF REVIEW

Under Delaware Rule of Evidence 403 ("D.R.E. __"), the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of

9

one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Under D.R.E. 404(b)(1), evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Under D.R.E. 404(b)(2), such evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

## PARTIES' ASSERTIONS

### A. The State

The State intends to introduce evidence of Mr. Edelin's prior robberies to establish his (1) identity as the perpetrator of the instant robberies, (2) intent, and (3) knowledge of the banks and dye packs.

The State asserts that the evidence is material to the facts at issue and admitted for the purposes of establishing the Mr. Edelin's *modus operandi* and knowledge. The State argues that, as evidenced by his prior charges and convictions, Mr. Edelin uses the same *modus operandi* when choosing the banks to rob, and in robbing the banks by wearing a disguise and using a demand note.

10

## B. Mr. Edelin

Mr. Edelin argues that the introduction of such evidence would violate D.R.E. 403 and 404. Mr. Edelin further asserts that, with respect to a *Getz* analysis, it is very likely that the jury would simply infer that the evidence shows Mr. Edelin has a bad character or a general criminal disposition. Mr. Edelin contends that the prior robberies have very little, if any, bearing on any material issues in this case and asks this Court to deny the State's Motion.

## DISCUSSION

The State seeks to introduce at trial evidence of prior robberies, specifically the locations, disguises, demand notes, and evidence tending to show knowledge of dye packs, that Mr. Edelin was charged with, and later pled guilty to, in 2008 and 2014.

Evidence of other crimes or bad acts is generally inadmissible to prove the commission of the offense charged.[38] This rule prevents the State from proving a charged offense by presenting evidence of other crimes on the theory that the defendant acted in conformity with his prior bad acts. That is, the State cannot use another offense to establish that the defendant had a propensity to commit the charged offense.[39] D.R.E. 404(b) sets forth the general rule and its exceptions.

---

[38] *Getz v. State*, 538 A.2d 726, 730 (Del. 1988).
[39] *Deshields v. State*, 706 A.2d 502, 506 (Del. 1998).

Under D.R.E. 404(b)(1), evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Under D.R.E. 404(b)(2), such evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Five guidelines are to be considered by trial judges in assessing the admissibility of evidence under Rule 404(b) are set forth in *Getz v. State*: (1) the evidence must be material to an issue in the case; (2) the evidence must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition; (3) the evidence of other acts must be proved by plain, clear and conclusive evidence; (4) the other acts cannot be too remote in time;[40] and (5) the court needs to balance the probative value of such evidence against its potential for prejudice under D.R.E. 403. If the evidence is admitted, the judge must instruct the jury about the reason the evidence was admitted.[41]

---

[40] Evidence is remote only when there is "no visible, plain, or necessary connection" between the evidence and the charges currently before the court. *See State v. Ashley*, 1998 WL 731568 (Del. Super.) (citing *Lloyd v. State*, 1991 WL 247734 (Del. 1991).

[41] *Getz*, at 734.

To meet the first prong of *Getz*, the evidence must be material to an issue or fact in dispute in the case. Evidence is material if it tends, of itself or in connection with other evidence, to influence the result reached by the jury.[42]

Here, the first prong is satisfied because evidence of Mr. Edelin's prior crimes involving robbery is being offered to prove identity, a material fact in dispute, in the instant case involving robbery and such evidence is likely to influence the result reached by a jury.

To meet the second prong of *Getz*, the evidence of other crimes must be introduced for a purpose sanctioned by D.R.E. 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition. In other words, a party may offer evidence of prior misconduct for any material purpose other than to show a defendant's mere propensity or disposition to commit the charged crime. Under D.R.E. 404(b)(2), such evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The State argues that they intend to introduce the evidence of the prior robberies "to establish (the Defendant's) identity as the perpetrator of the instant robberies, his intent, and his knowledge of the banks and dye packs." The State also

---

[42] *Lloyd v. State*, 604 A.2d 418, 1991 WL 247737, at *2 (Del. Nov. 6, 1991) (TABLE).

13

asserts the "Defendant uses the same *modus operandi* ("M.O.") when committing bank robberies by wearing some form of a disguise and passing a demand note."

When evidence of other crimes is used to prove identity, a much greater degree of similarity between the charged crime and the prior crimes is required than when such evidence is used to prove a state of mind.[43] In other words, if the defendant was convicted of the prior conduct, the State must still show a greater degree of similarity if the prior acts are being used to prove identity as opposed to motive or intent.[44] The stringent identity standard requires a mark whose distinctive nature tends to differentiate those offenses from others.[45]

While not directly listed under 404(b), the *modus operandi* or "method of working" exception has been traditionally used as another subset of identity evidence. It refers to a pattern of criminal behavior so distinct that separate offenses are recognized as the work of the same person.[46] Between the offense offered to prove *modus operandi* and the offense charged, there must be a clear connection which creates a logical inference that, if defendant committed the former offense, he also committed the latter. This inference arises when both crimes share peculiar and

---

[43] *State v. Rodriguez*, 2010 WL 1987520, at *6 (Del. Super. May 18, 2010) (citing to *U.S. v. Myers*, 550 F.2d 1036, 1045 (5th Cir. 1977).

[44] *Id.*

[45] *Rodriguez*, at *6.

[46] *Id.* at *7.

distinctive features not shared by most offenses of the same type and which, therefore, earmark the offenses as one person's handiwork. The offenses need not be identical but must share features which, although common to similar crimes in general, are distinctive when considered together.[47]

If the purpose of the evidence is to show that the defendant's prior criminal conduct provided knowledge or preparation, it may be necessary that the prior conduct be similar to the offense charged.[48]

Under the common plan or scheme exception, evidence of similar criminal acts is generally admitted under the exception in two fact situations. The first involves the use of prior acts which are so unusual and distinctive that their relationship to the charged offense may establish identity.[49] The second basis for admissibility of other bad acts under the plan or scheme exception is where the other acts form part of the background of the alleged act, to which it is inextricably related and without which a full understanding of the charged offense is not gained.[50]

---

[47] *Rodriguez*, at *7 (citing to *People v. Clay*, 811 N.E.2d 276, 282 (Ill. App. Ct. 2004).

[48] 29 Am. Jur. 2d Evidence § 416 (2021); *see U.S. v. Bailleaux*, 685 F.2d 1105, 11 Fed. R. Evid. Serv. 1300 (9th Cir. 1982).

[49] *Getz*; *see also Dutton v. State*, 452 A.2d at 145; *Commonwealth v. Shively*, 424 A.2d at 1259; C. McCormick, Evidence, § 190, at 559.

[50] *Getz*; *see also State v. Curry*, 330 N.E.2d at 725.

Repetition is not, in itself, evidence of a plan and other "crimes of the sort with which he is charged" cannot be admitted against the defendant under that guise.[51]

## A. Locations

In 2019, the State alleges that Mr. Edelin robbed Newark Citizens Bank, Wilmington Citizens Bank, and New Castle M&T Bank. The State draws the inference that, because Mr. Edelin robbed these locations before,[52] that Mr. Edelin must have robbed the banks here. The State argues that this evidence should be admitted under identity and *modus operandi*, however the Court will examine the admissibility of the evidence under the entirety of D.R.E. 404(b). Moreover, the State attempts to admit location evidence of Mr. Edelin's prior bank robberies that are not identical as the instant robberies, but in close proximity to the banks he is alleged to have robbed in 2019. The Court will bifurcate its analysis and address the banks in close proximity after.

For the purposes of identity, the fact that Mr. Edelin robbed these three locations does not satisfy the greater degree of similarity as described in *State v. Rodriguez.*

---

[51] *Getz*; *see also United States v. Dothard*, 11th Cir., 666 F.2d 498, 502 (1982).
[52] Newark Citizens Bank: once in 2014; Wilmington Citizens Bank: once in 2007; New Castle M&T Bank: twice in 2014 and twice in 2008 when it was the Wilmington Trust.

Next, for purposes of modus operandi, the generic characteristics of the prior robberies does not reach the high degree of similarity that marks the present robberies that Mr. Edelin is accused of as the handiwork of the Mr. Edelin. The mere use of a disguise and demand note is sufficiently specific or unique. As the Washington Court of Appeals found in *State v. Perron*,[53] which stands for the proposition that generic characteristics of a crime does not reach the high degree of similarity that marks the act as the handiwork of the accused, the facts here do not reflect a high degree of similarity. Similar to the case there, the evidence here weighing in favor of similarity includes that the same banks were robbed, a demand note was used, and the suspect wore a disguise. In short, these similarities are too general and the mere fact that Mr. Edelin has robbed these banks for money in the past is the invitation to convict on basis of propensity.

With regards to knowledge, despite the State's contention that Mr. Edelin's experience in robbing these banks in the past tends to show Mr. Edelin's familiarity or knowledge of the banks, these prior robberies do not demonstrate any *special* knowledge of the bank used to commit the robberies here. As the Seventh Circuit Court of Appeals found in *U.S. v. Owens*,[54] which stands for the proposition that evidence of a prior bank robbery is not admissible to demonstrate the defendant's

---

[53] *State v. Perron*, 2017 WL 6604102 (Wash. App. Dec. 27, 2017).
[54] *U.S. v. Owens*, 424 F.3d 649, 655 (7th Cir. 2005).

17

knowledge and familiarity with the bank that he robbed in the charged incident where the evidence does not demonstrate any *special* knowledge of the bank used to commit the present crime, there is no evidence here to suggest that Mr. Edelin has some special knowledge of the bank that he used to allegedly commit the present crime. Although Mr. Edelin's prior robberies and the present robberies Mr. Edelin is accused of committing were committed in substantially the same way, in that both robberies involved an individual wearing a disguise and demand note, the same may be said of many bank robberies.

Next, such evidence is not admissible under common plan or scheme for the reason that the prior robberies are not so unusual and distinctive that their relationship to the charged offense may establish identity.[55]

Last, as for the remaining purposes left under D.R.E. 404(b)(2),[56] none appear to apply to the same location robberies under the facts available to this Court. Accordingly, the State may not introduce evidence that Mr. Edelin pled guilty to robbing these very same banks before.

As for the remaining banks, the State attempts to bridge a connection between these banks that were robbed previously by Mr. Edelin and the banks robbed in the

---

[55] *Getz*; *see also Dutton v. State*, 452 A.2d at 145; *Commonwealth v. Shively*, 424 A.2d at 1259; C. McCormick, Evidence, § 190, at 559.
[56] (1) Motive; (2) Opportunity; (3) Intent; (4) Preparation; (5) Absence of Mistake; and (6) Lack of Accident.

18

instant matter in 2019, but not precisely the same location. The State argues, since Mr. Edelin previously robbed the Wilmington PNC Bank twice and the Wilmington Trust in Wilmington[57] once, of which both banks are located in close proximity to the Wilmington Citizens Bank, that this is sufficient to warrant admission.

These close in proximity robberies that Mr. Edelin previously pled guilty to are not so similar, nor tending to show a pattern, or some other unusual characteristic that implicates Mr. Edelin in robbing the three alleged robberies. Merely being in close proximity is not enough to warrant admission under any of the bases under D.R.E. 404(b).

Accordingly, evidence that shows Mr. Edelin has previously robbed the very same banks or banks that are close in proximity to the banks that Mr. Edelin is now accused of robbing is inadmissible.

## B. Disguises

For the Newark Citizens Bank, the suspect wore a black jacket with the hood pulled tight around the suspect's face. For the Wilmington Citizens Bank, the suspect wore all black clothing with a black knit hat. Last, for the New Castle M&T Bank,

---

[57] The Wilmington Trust in Wilmington is now M&T Bank and located across the street of the Wilmington Citizens Bank – a bank Mr. Edelin is accused of robbing here.

the suspect there wore all black clothing with a hood pulled tightly around the suspect's face.

In the robberies that Mr. Edelin has previously pled guilty to, he wore various disguises included a black winter hat, sunglasses, a baseball hat, a dark t-shirt, a black knit hat, a hooded sweatshirt with the hood up, and dark pants. Here, the mere fact that the robber in 2019 and Mr. Edelin in 2014 and 2007-08 wore a dark colored disguise, and/or wore a sweatshirt with a hood, and/or wore sunglasses and a hat, and/or used a note to demand money from the teller, does not implicate a sufficient degree of similarity or pattern of behavior that carries a mark of distinction. Indeed, these disguises are more similar in nature to those found in *U.S. v. Myers*,[58] *State v. Randolph*,[59] and *State v. Timmons*[60] in the sense that these types of disguises are either of such common occurrence in robberies or bore insufficient similarity to the disguises used in the robberies at issue. Unlike in *Commonwealth v. Floyd*,[61] where the court there found that the use of Muslim clothing as a form of disguise while committing gunpoint robberies reflected a pattern of behavior that carried a mark of distinction, the disguises here carry no such mark of distinction that would distinguish Mr. Edelin's disguises from disguises used in other robberies.

---

[58] *U.S. v. Myers*, 550 F.2d 1036 (5th Cir. 1977).
[59] *State v. Randolph*, 933 A.2d 1158 (Conn. 2007).
[60] *State v. Timmons*, 327 S.C. 48 (July 21, 1997).
[61] *Com. v. Floyd*, 2013 WL 11299434, at *15.

In short, something more than repeated performance of the same class of crimes is required. The similarity in the crimes must be so distinct so as to raise the inference that the accused is the perpetrator of the crime in question. These similarities in disguises are a common component of armed bank robberies and could easily be exhibited by persons other than Mr. Edelin. Accordingly, evidence of the disguises used in the previous robberies that Mr. Edelin has pled guilty to is inadmissible.

## C. Bank Notes and Comments

For the Newark Citizens Bank, the suspect in the 2019 robbery used a note that stated "give me all your cash or I will shoot you." For the Wilmington Citizens Bank, the suspect in the 2019 robbery used a note that stated "give me all the money." For the New Castle M&T Bank, the suspect in the 2019 robbery used a note that stated "GIVE ME ALL THE MONEY."

For the robberies that Mr. Edelin pled guilty to, the only notes that are sufficiently similar are the notes used in the 2014 Newark Citizens Bank robbery and New Castle M&T Bank robberies in 2014. For the 2014 Newark Citizens Bank robbery, the note used there stated "just give me all the money Right Now." For the 2014 New Castle M&T Bank robberies, the notes used there stated "give me all your money" and later "give me all of your money now."

21

In *U.S. v. Rogers*,[62] the Fifth Circuit Court of Appeals stated that the similarity of the demand notes used in the two robberies there supported the theory that they were perpetrated by the same person. The first note stated: "This is a robbery I have a gun If you draw any attention-you shall no doubt die first Give me prepacked $100 bills you have 10 Seconds." The second note stated: "I got a gun If you draw any attention I'll shoot you first Move fast give me prepacked hundred-dollar bills!! I don't have nothing to lose. nothing."[63]

Unlike the similarities in wording as found in *U.S. v. Rogers* in the demand notes used, the similarities in wording in the prior bank demand notes used by Mr. Edelin in comparison to the bank demand notes used by the suspect in the present robberies are not sufficiently distinct or unique to support the theory that the present robberies were perpetrated by Mr. Edelin. In *U.S. v. Rogers*, where the notes included unique similarities (such as the mention of a gun, warning against drawing attention, or the use of the term prepacked hundred-dollar bills), the notes here do not appear to have some unique characteristic or phraseology that implies that Mr. Edelin must have robbed the bank in 2019 on the basis of the similarities in the demand notes he used in the past.

---

[62] *U.S. v. Rogers*, 126 F.3d 655 (5th Cir. 1997).
[63] *Id.* at p. 657.

These notes are fairly similar to the notes used in 2019 in terms of wording, however distinguishable on the basis of capitalization and, with regards to the Newark Citizens Bank note, the threat of violence by shooting. Problematically, demand terms such as "give me the money" or "give me all your money" are relatively generic. Without additional unique attributes or similarities, these prior demand notes are too general and fail to implicate Mr. Edelin in the 2019 robberies to a sufficient degree to warrant introduction under identity, modus operandi, intent, or common plan. Moreover, the remaining bases under D.R.E. 404(b) are inapplicable.

Last, the State seeks to introduce comments made by Mr. Edelin in past robberies. With regards to the 2019 New Castle M&T Bank robbery, the suspect there verbally stated to the bank teller "you know what's going on." For the 2014 robbery of the same M&T Bank, of which Mr. Edelin pled guilty to, the robber told the bank teller "don't do anything funny, I have a gun and don't want to hurt anybody, and don't hand me no packs or dye." For the 2008 robbery of the Wilmington PNC Bank, of which Mr. Edelin pled guilty to, the robber told the bank teller "come on, Miss Danika, we don't have all day." There are no similarities in these statements that implicate Mr. Edelin in the 2019 New Castle M&T Bank robbery.

Accordingly, the demand notes and verbal statements made by Mr. Edelin from the 2014 and 2007-08 robberies are inadmissible.

**D. Dye Packs**

In 2008, Mr. Edelin was caught by the authorities in the Wilmington Public Library due to a dye pack hidden within the bag containing stolen money. The State argues that, due to Mr. Edelin's prior robbery arrest due to a dye pack, Mr. Edelin became cognizant of dye packs and knew how to remove the dye pack during the 2019 Wilmington Citizens Bank robbery.

Here, although Mr. Edelin may have gained knowledge from having been caught by the authorities due to a hidden dye pack in a 2008 robbery, knowledge of dye packs or that banks use dye packs in the event of a robbery is fairly common. This knowledge is not so distinctive that it would create an inference that Mr. Edelin must have committed the robbery in 2019 due to the suspect's removal of a dye pack and his experience with dye packs in 2008. This knowledge also fails to implicate Mr. Edelin in the 2019 robberies to a sufficient degree to warrant introduction under modus operandi, intent, or common plan, or knowledge. Additionally, none of the remaining bases under D.R.E. 404(b) are applicable. As a result, evidence of dye packs from prior robberies that Mr. Edelin has pled guilty to is inadmissible for the purposes of identity, modus operandi, intent, common plan, or knowledge.

In sum, the second prong of *Getz* is not met with regards to evidence concerning Mr. Edelin's prior bank robbery locations, disguises, bank notes, and knowledge of dye packs.

Accordingly, evidence concerning the locations of Mr. Edelin's prior bank robberies, disguises, bank notes, and knowledge of dye packs is inadmissible for the reasons stated above.

## CONCLUSION

For the forgoing reasons, the State's Motion *in Limine* is **DENIED.**

**IT IS SO ORDERED.**

<u>/s/ Calvin L. Scott</u>
**The Honorable Calvin L. Scott, Jr.**

25